# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**LONZINE ADAMS,**

    Petitioner,

v.                                                  Case No. 8:19-cv-1733-MSS-AAS
                                                         Case No.: 8:14-cr-102-MSS-AAS

**UNITED STATES OF AMERICA,**

    Respondent.
_____/

## ORDER

This cause comes before the Court on Petitioner Lonzine Adams's *pro se* Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence. Civ. Docs. 1–2. The United States responded in opposition, and Adams replied. Civ. Docs. 7 and 8. For the reasons stated herein, the Court **DENIES** the relief Adams seeks.

**I.**     **Background**

Adams was charged in a two-count indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and possession of 28 grams or more of cocaine base with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The indictment listed Adams's three Florida felony drug convictions and one federal felony drug conviction to support the Section 922(g) charge. Crim. Doc. 1.

Adamas pleaded guilty with a plea agreement to both counts of the indictment. The factual basis in the plea agreement listed the same four felony drug convictions listed in the indictment. Crim. Doc. 22.

During his plea hearing, Adams confirmed under oath that he understood the charges to which he was pleading guilty, confirmed his prior state and federal felony drug convictions, acknowledged he had a complete opportunity to discuss the case with counsel, and confirmed that he was fully satisfied with counsel's advice. Crim. Doc. 82 at 20–22. Adams confirmed he understood the plea agreement, that he initialed and signed the plea agreement, and that he discussed it with counsel before signing. *Id.* at 26–27.

The Court advised, and Adams understood, that he faced a mandatory minimum sentence of 15 years' imprisonment and a maximum sentence of life imprisonment on Count One, and that he faced a mandatory minimum sentence of 5 years' imprisonment and a maximum sentence of 40 years' imprisonment on Count Two. *Id.* at 40–42. Adams understood that the sentencing guidelines would be used to calculate his sentence, that the Court would consider his criminal history, his role in the offense, whether it was a crime of violence, the drugs and firearms involved, among other factors, and that no one could tell him his guideline range "because that requires a presentence report . . . which [would not be prepared] until after [he] plead[ed] guilty." *Id.* at 45–46. Adams accepted the factual basis read by the United States, including the four felony drug convictions listed in his plea agreement. *Id.* at 59–61. Adams agreed that he was a convicted felon but disputed "whether or not he was actually convicted of the sale and possession of cocaine." *Id.* at 61.

The Probation Office determined that Adams was an armed career criminal as defined by U.S. Sentencing Guideline Section 4B1.4, based on his four felony drug convictions that were listed in the indictment and plea agreement, including his three felony drug convictions under Florida Statute Section 893.13 and his federal drug conviction. Adams's armed career criminal designation was also based on three Florida felony robbery convictions. Crim. Doc.

43 at ¶ 33. Adams's total offense level was 31, his criminal history category was VI, and his sentencing guidelines range was 188 to 235 months' imprisonment. *Id.* at ¶ 108.

At sentencing, Adams objected to the use of his robbery convictions to calculate his criminal history and his armed career criminal designation. Crim. Doc. 79 at 5, 20–27. Adams asked whether his felony robbery convictions resulted in his armed career criminal designation. The Court answered, "Yes. I believe, however, that even if we exclude the three robberies from 1974, [Adams] would still qualify [as an armed career criminal] based on the '87 drug charges, which there are two, and the '94 and 2000 drug charges." *Id.* at 22–23. Adams understood the guideline calculations, but he believed he was being unfairly punished for his prior felony convictions. The following exchange occurred:

> THE COURT: But you knew you were a felon.
>
> ADAMS: I knew I was a felon.
>
> THE COURT: And you knew felons weren't supposed to have a gun.
>
> ADAMS: Right, but I didn't know the consequences of being this bad neither. . . .
>
> THE COURT: But the fact of the matter is that you understand having spoken to your lawyer how the guidelines operate?
>
> ADAMS: I understand it now.
>
> THE COURT: And you don't like it, but you understand it?
>
> ADAMS: I understand it, ma'am.

*Id.* at 21–22. Counsel asked the Court to consider Adams's age and health and impose a mandatory-minimum sentence of 180 months' imprisonment. *Id.* at 28. Counsel acknowledged that, even without Adams's robbery convictions, he "still ha[d] the three serious drug offenses from State Court . . . and the one from Federal Court in 2000, that would

qualify him for armed career criminal under the current code." *Id.* at 29. The Court varied downward from the advisory guideline range, citing Adams's age, health, and background, and sentenced him to 180 months' imprisonment and four years' supervised release. *Id*. at 42.

Adams did not appeal. Instead, he filed a Section 2255 motion, asserting that counsel was ineffective for failing to file a notice of appeal, among other claims. *Adams v. United States*, 8:15-cv-2341-T-35AAS. Employing the procedure set forth in *United States v. Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000), the Court granted the motion in part and entered an amended judgment, in order to allow Adams to file an out-of-time appeal.

Court-appointed, appellate counsel filed a brief in accord with *Anders v. California*, 386 U.S. 738 (1967). Appellate counsel could not argue in good faith that Adams did not knowingly and voluntarily plead guilty or that Adams's sentence was subject to reversible error. However, appellate counsel requested the appellate court to independently review the record for any issues of arguable merit. Civ. Doc. 7-1 at 12–13. Adams, proceeding *pro se*, filed a supplemental brief, arguing that trial counsel was ineffective at sentencing, that the United States breached the plea agreement, and that the appellate court "should overrule its holding that the pre-2002 version of Fla. Stat. 893.13 meets the federal definition of a controlled substance offense." Civ. Doc. 7-2 at 8. After an "independent examination of the entire record reveal[ed] no arguable issues of merit," the appellate court affirmed Adams's convictions and sentence. Crim. Doc. 87.

## II. Discussion

Adams now moves to vacate his convictions and sentence on three grounds: (1) that counsel was ineffective because he incorrectly advised Adams about his potential sentence,

4

and as a result, Adams's guilty plea was unknowing and involuntary; (2) that counsel was ineffective for failing to object to the United States' breach of the plea agreement; and (3) that he is actually innocent of being an armed career criminal because his prior felony convictions under Florida Statute Section 893.13 are not a qualifying "serious drug offenses" under the Armed Career Criminal Act ("ACCA"). The United States concedes that Adams's Section 2255 motion is timely.

To succeed on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating performance, the district court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Ci. 1995) (*en banc*) (citations omitted).

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted). Indeed, "it does not follow that any

counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Waters*, 46 F.3d at 1522.

A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### A. Ground One

In Ground One, Adams asserts that counsel was ineffective because he incorrectly advised Adams about his potential sentence, and as a result, Adams's guilty plea was unknowing and involuntary. Specifically, he alleges that, before entering into the plea agreement, counsel advised him that his guideline range would be 51 to 63 months' imprisonment. Civ. Doc. 2 at 11. Adams further alleges that, at sentencing, he told counsel to object to the "gun enhancement" and the "drug quantity" in the presentence report, which resulted in a guideline range of 188 to 235 months' imprisonment, but that counsel refused to object. Adams asserts that he would have proceeded to trial, absent counsel's incorrect advice regarding his sentence.

In his responsive affidavit, counsel disputes Adams's assertions. He states that he met with Adams on numerous occasions to discuss possible defenses and the sentencing guidelines. They discussed all of Adams's prior convictions, including convictions dating back to the 1970's, that would enhance his potential sentence. He states that, before the plea hearing, they again discussed the sentencing guidelines and the mandatory minimum

6

sentence. Based on their conversations, counsel was confident that Adams understood the case and was pleading guilty freely and voluntarily. Civ. Doc. 7-3 at 3–4.

"The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To be entitled to relief, the petitioner must "prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) (citations omitted). To show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A petitioner's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)). "[T]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Adams cannot meet his burden of demonstrating his that his guilty plea was unknowing or involuntary. His assertion that counsel promised him a sentencing range of 51 to 63 months' imprisonment is contradicted by his statements under oath at the plea hearing.

At the plea hearing, Adams confirmed that the "plea agreement [was] complete as to any promises or understandings" and denied that there were any other promises not included in the plea agreement. Crim. Doc. 82 at 38. Adams confirmed he understood the charges against him to which he was pleading guilty. Furthermore, the Court correctly explained, and Adams acknowledged he understood, the minimum and maximum penalty for both charges. *See Dickey v. United States*, 437 F. App'x 851, 852 (11th Cir. 2011) (affirming the denial of a § 2255 motion because the court correctly explained, and the defendant understood, the potential penalties he faced).[1] His conclusory assertion that he would have proceeded to trial absent counsel's advice is unsupported and therefore insufficient to warrant an evidentiary hearing. Consequently, Adams is not entitled to relief on Ground One.

### B. Ground Two

In Ground Two, Adams asserts that counsel was ineffective for failing to challenge the United States' purported breach of the plea agreement. He argues that, when he entered into the plea agreement, counsel explained, and the United States agreed, that his sentencing range was 51 to 63 months' imprisonment. He contends that counsel should have objected when the presentence report calculated his guideline range as 188 to 235 months' imprisonment. He urges the court to hold an evidentiary hearing to determine the scope of the United States' promises. In response, counsel states there was no agreement to a range of 51 to 63 months' imprisonment and that he did not advise Adams he would receive that range of imprisonment. Civ. Doc. 7-3 at 4.

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

The plea agreement contains no provision agreeing upon a range of 51 to 63 months' imprisonment, or any other specific range of imprisonment or sentence. To the contrary, the plea agreement states that "the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement[,]" and that "such a recommendation is not binding on the Court." Crim. Doc. 22 at 3–4. Also, the parties agreed that "the United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, [and] to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads." *Id.* at 14.

Adams fails to show that trial counsel's performance was deficient, or that he was prejudiced, when counsel failed to object to the United States' purported breach of the plea agreement. Adams points to nothing in the record to support his assertion that he was promised, or agreed to, a specific guideline range or sentence. His claim is refuted by his consent to the terms of his plea agreement and his sworn statements at his plea hearing. Adams provides no support for his assertion that counsel should have objected to a purported breach of the plea agreement. Counsel was not ineffective for failing to raise this meritless objection. *See Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019) ("Defense counsel . . . need not make meritless motions or lodge futile objections."); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance."). Furthermore, Adams is not entitled to an

evidentiary hearing on this meritless claim because his assertions are plainly contradicted by the record. Consequently, Adams is not entitled to relief on Ground Two.

In his reply brief, Adams attempts to add two grounds for relief within Ground Two. For the first time, he asserts that the United States breached the plea agreement by failing to afford him an opportunity to earn a reduced sentence by cooperating in the prosecution of others. Also, he asserts that appellate counsel failed to raise this issue on appeal. Civ. Doc. 8 at 4–5. These claims are waived because Adams did not raise them until filing his reply brief. *Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district court's refusal to consider a new issue raised in a reply brief). New claims raised in a reply brief are barred even when the movant is proceeding without counsel. *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although *pro se* pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a *pro se* litigant in his initial brief are deemed waived."); *see also Snyder v. United States*, 263 F. App'x 778, 780 (11th Cir. 2008) (affirming the district court's ruling that a *pro se* petitioner's reply brief could not be construed as an amendment to add an additional claim to the motion to vacate). Nevertheless, even if Adams had not waived these claims, they lack merit. The plea agreement contains no provision promising a reduced sentence based on his cooperation, and appellate counsel could not be ineffective for failing to raise a meritless claim.

### C.    Ground Three

In Ground Three, Adams asserts that he is actually innocent of being an armed career criminal because his prior felony convictions under Fla. Stat. § 893.13 are not qualifying "serious drug offenses" under the ACCA. The United States argues that this claim is procedurally defaulted because Adams failed to raise it at sentencing or on appeal. However,

Adams, in fact, argued in his supplementary appellate brief that the appellate court "should overrule its holding that the pre-2002 version of Fla. Stat. 893.13 meets the federal definition of a controlled substance offense." Civ. Doc. 7-2 at 20. He challenged, although briefly, "whether under the federal definition[,] [Fla. Stat. § 893.13] qualifies as a prior predicate offense." *Id.* The appellate court summarily affirmed Adams's convictions and sentence, finding "no arguable issues of merit." Crim. Doc. 87. Consequently, the claim is not procedurally defaulted, but rather, barred by prior resolution.

Ordinarily, "[o]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."). Adams is not entitled to review of his claim that his felony convictions under § 893.13 are not qualifying serious drug offenses under the ACCA because that claim was resolved against him on appeal.

Nevertheless, the claim lacks merit. *United States v. Smith* holds that convictions under Fla. Stat. § 893.13 qualify as serious drug offenses under the ACCA. 775 F.3d 1262, 1266–68 (11th Cir. 2014). Adams correctly points out that, in *Shular v. United States*, 139 S. Ct. 2773 (2019), the Supreme Court granted certiorari to review whether § 893.13 convictions qualify as serious drug offenses under the ACCA. The Supreme Court has since issued its ruling.

The Supreme Court affirmed the Eleventh Circuit's holding that a § 893.13 conviction qualifies as a "serious drug offense" under the ACCA. *Shular v. United States*, __ U.S. __, 140 S. Ct. 779, 782, 787 (2020) (reasoning that the ACCA's definition of a serious drug offense "requires only that the state offense involve the conduct specified in the federal statute; it does

11

not require that the state offense match certain generic offenses"). Consequently, Adams is not entitled to relief on Ground Three.

## III. Need for Evidentiary Hearing

A district court deciding a Section 2255 motion may "order . . . its summary dismissal '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003) (quoting 28 U.S.C. § 2255). No hearing is required when the record establishes that a Section 2255 claim lacks merit, *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Adams has not established the need for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (*en banc*).

## IV. Conclusion

Accordingly, Adams's *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment against Adams, to **CLOSE** this case, and to enter a copy of this order in the criminal action.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Adams is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Adams must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Adams has not shown that reasonable jurists would debate either the merits of the claims or the procedural issues. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Adams must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 28th day of June, 2021.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE